Filed 12/20/23  P. v. Tolentino CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>EDUARDO TOLENTINO,<br><br>    Defendant and Appellant. | D081301<br><br><br><br>(Super. Ct. No. JCF000902) |

APPEAL from a judgment of the Superior Court of Imperial County, Poli Flores, Jr., Judge.  Affirmed.

Russell S. Babcock, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and Genevieve Herbert, Deputy Attorneys General, for Plaintiff and Respondent.

Following a guilty plea to first degree murder (Pen. Code, § 187, subd. (a)) and child abuse (*id.*, § 273a, subd. (a)),[1] Eduardo Tolentino appeals from the judgment. He specifically challenges the trial court's denial of a motion that he made, prior to the entry of his guilty plea, to relieve his appointed counsel pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*). We conclude that the trial court did not abuse its discretion in denying the *Marsden* motion. Accordingly, we affirm the judgment.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Tolentino shot and killed Daniel Hernandez on May 30, 2018, while Hernandez was sitting in a vehicle at a gas station.[2] A minor at the scene was shot in the leg. Tolentino apparently knew Hernandez based on their mutual history of gang membership. Hernandez's brother claimed to have witnessed the killing.

An amended information charged Tolentino with first degree murder (§ 187, subd. (a)) (count 1), shooting at an occupied motor vehicle (§ 246) (count 2), and child abuse (§ 273a, subd. (a)) (count 3). Counts 1 and 2 also included firearm use allegations (§§ 12022.53, subds. (b)–(d)). Tolentino was further alleged to have incurred a previous strike (§§ 667, subd. (d), 1170.12, subd. (b)) and two prior prison terms (§ 667.5, subd. (b)). According to the People, Tolentino faced a maximum sentence of 11 years plus 50 years to life based on the charges in the amended information.

---

[1]     Unless otherwise indicated, all further statutory references are to the Penal Code.

[2]     We base our description of Tolentino's crimes on the information in the probation officer's report.

On June 27, 2022, the day before trial was to begin, Tolentino requested a hearing to consider a *Marsden* motion for an order relieving his attorney, Steven Honse, and appointing new counsel. Honse was Tolentino's fourth attorney and had been representing him since June 2021. After holding a hearing, the trial court denied the *Marsden* motion. That order is the subject of this appeal. We will discuss the details of the *Marsden* hearing in our subsequent analysis.

On July 6, 2022, Tolentino pled guilty to first degree murder (count 1) and child abuse (count 3). The guilty plea included an admission to only one of the firearm allegations, namely personal use of a firearm in committing the murder. (§ 12022.53, subd. (b).) As part of the same agreement, Tolentino agreed to plead guilty to one count in a different case (JCF002433), and the People agreed to seek a dismissal of a third case (JCF002066).

On August 19, 2022, Tolentino again requested a *Marsden* hearing to relieve Honse as counsel. At the *Marsden* hearing, Honse told the trial court that he believed there was now a conflict of interest because Tolentino desired to withdraw his guilty plea based on Honse's alleged ineffective assistance in advising him about the guilty plea. The trial court granted the *Marsden* motion and appointed new counsel.

At an October 7, 2022 sentencing hearing, Tolentino asked to represent himself, based on a contention, among others, that his *newly appointed* counsel had also been ineffective. Specifically, Tolentino wished to represent himself in filing a motion to withdraw his guilty plea. The trial court denied Tolentino's request and imposed sentence according to the terms of the plea agreement. In denying Tolentino's request to represent himself, the trial court noted that Tolentino had made similar allegations of ineffective assistance against "every counsel he's had." The trial court sentenced

3

Tolentino to an indeterminate term of 35 years to life with a concurrent four-year determinate term.

On an application from Tolentino, the trial court issued a certificate of probable cause, and Tolentino filed this appeal, in which he argues that the trial court prejudicially abused its discretion in denying the June 27, 2022 *Marsden* motion.

## II.

## DISCUSSION

A.    *Applicable Legal Standards*

We begin by setting forth the legal standards that apply to our review of a ruling on a *Marsden* motion.

" 'When a defendant seeks substitution of appointed counsel pursuant to [*Marsden, supra*, 2 Cal.3d 118], "the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of inadequate performance.  A defendant is entitled to relief if the record clearly shows that the appointed counsel is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result." '  [Citation.]  We review a trial court's denial of a *Marsden* motion for abuse of discretion. [Citation.]  'Denial is not an abuse of discretion "unless the defendant has shown that a failure to replace counsel would substantially impair the defendant's right to assistance of counsel." ' "  (*People v. Ng* (2022) 13 Cal.5th 448, 500 (*Ng*).)

B.    *The* Marsden *Hearing*

Next, we detail the proceedings during the June 27, 2022 *Marsden* hearing.  During the course of that hearing, Tolentino explained that he

sought new counsel both because he did not trust Honse, and because he did not believe that Honse had adequately prepared the case.

Tolentino began by explaining that shortly after Honse was appointed to represent him, Honse visited him in jail for the first time on July 8, 2021. Honse's investigator then visited Tolentino two times in the next couple of months. According to Tolentino, the investigator "said that [Honse's] work ethic wasn't . . . enough to get me proper counsel, that he wasn't the right attorney for me due to the fact he was lazy, that he didn't want to file a motion for me." The investigator allegedly said that Honse "[is] not going to do all of the footwork to look for which motion is going to be able to help on your case, to look at the—he doesn't want to see the video. He hasn't even read the discovery. He hasn't seen the videos." According to Tolentino, the investigator stated "[s]omething about [Honse] being a D.A. before or something like that and that in his heart he still feels judgmental or bias to people that commit felonies."

Tolentino also explained that Honse visited him "maybe two other times" for short visits and had talked to him for "about maybe five minutes" regarding the case. Tolentino also objected to the fact that, although he had received copies of the discovery, Honse had not reviewed that discovery with him to strategize about his defense. Tolentino explained that he "want[s] to be able to help [Honse] on what questions he needs to ask the witnesses and what he shouldn't ask and stuff like that that's going to help my case."

Tolentino further complained about some unsatisfactory communication he had with Honse about a potential defense witness. Tolentino related that he had tried to speak with Honse about the witness, but Honse dismissed him by saying "he didn't want to hear about it if [the witness] wasn't going to come and testify." More recently, Tolentino told

5

Honse that he thought he may have "found that witness" and "he might be willing to come," but Honse complained, "Why did you just tell me now?"

Tolentino summarized his position by stating, "I just need new counsel because I don't feel that Mr. Honse . . . is trustworthy or putting in that work that I need him to do for—for this case."

The trial court then asked Honse for his response. Honse stated that he found it "inconceivable" that the investigator would have said what Tolentino claimed he said. When Tolentino persisted in claiming that the investigator did make those comments, Honse pointed out that the investigator was "right outside the door" if the court wanted to hear from him. Tolentino preemptively rejected the value of whatever the investigator would say in court, claiming that the investigator told him that "he wasn't going to go on the record for this." The investigator, accordingly, was not asked to participate in the hearing.

Regarding the comments about possible witnesses, Honse stated that he reviewed with Tolentino "all the potential witnesses early on." As to the specific potential defense witness that Tolentino referred to in his remarks, Honse explained that the witness would likely have hurt Tolentino's defense based on what Tolentino related about him, but that Honse did, in any event, have the investigator try to track down the witness based on the information that Tolentino recently provided. The effort was unsuccessful because Tolentino's information was "vague" and "nebulous."

Honse explained that he visited Tolentino in jail on three occasions, and the investigator visited Tolentino twice as many times. When the trial court asked Honse whether he had any reservations about proceeding as trial counsel, Honse represented, "I'm perfectly prepared for this." Honse specifically confirmed that he was ready for trial.

6

In ruling on the *Marsden* motion, the trial court concluded, "I'm convinced Mr. Honse . . . has prepared for this case. He's ready to go to trial. It's maybe a trust issue." The trial court explained that despite "the disagreements" and "the trust issue," the relationship between Honse and Tolentino had not deteriorated to the point where Honse could not continue to effectively represent Tolentino. Accordingly, the trial court denied the *Marsden* motion.

C. *The Trial Court Did Not Abuse Its Discretion*

Tolentino argues that the trial court abused its discretion in denying the *Marsden* motion because both of the alternate grounds for granting the *Marsden* motion were present: (1) Honse was " ' "not providing adequate representation," ' " and (2) he and Honse were " ' "embroiled in such an irreconcilable conflict that ineffective representation [was] likely to result." ' " (*Ng, supra*, 13 Cal.5th at p. 500.) We consider each in turn.

1. *Inadequate Representation*

As for his contention that Honse was not " 'providing adequate representation' " (*Ng, supra*, 13 Cal.5th at p. 500), Tolentino argues that "[t]here is a high probability that counsel Honse was not effectively representing [Tolentino], not having reviewed discovery with him and not having spent any where [*sic*] near the reasonable time on a case where [Tolentino] was facing incarceration for the rest of his life." Tolentino argues that "Honse chose to remain silent" which was "basically a tacit omission" that he "had not reviewed discovery" with Tolentino.

We conclude that the trial court was within its discretion to reject Tolentino's contention that Honse provided inadequate representation. First, to the extent Tolentino focuses on the fact that Honse did not meet with him to review the discovery, Tolentino made clear at the *Marsden* hearing that

7

although he had received copies of the discovery, he desired such a meeting with Honse to develop a defense *strategy* based on that discovery, such as preparing questions to ask witnesses. However, case law is clear that counsel, not the defendant, is in control of strategy. (*In re Barnett* (2003) 31 Cal.4th 466, 472 [a defendant represented by counsel " 'surrenders all but a handful of "fundamental" personal rights to counsel's complete control of defense strategies and tactics' "]; *People v. Valdez* (2004) 32 Cal.4th 73, 96 [" 'counsel is "captain of the ship" and can make all but a few fundamental decisions for the defendant' "].) " 'A defendant does not have the right to present a defense of his own choosing, but merely the right to an adequate and competent defense.' " (*Valdez*, at p. 95.) Thus, the trial court could reasonably conclude that Honse did not provide ineffective representation by failing to meet with Tolentino to consult with him on specific items of trial strategy.

Second, to the extent that Tolentino's claim of ineffective assistance is based on his more general concern that Honse did not spend sufficient time on his case or was not adequately prepared for trial, the trial court was entitled to credit Honse's statement that he was "perfectly prepared" and was ready for trial, notwithstanding Tolentino's suspicion to the contrary. (See *People v. Jones* (2003) 29 Cal.4th 1229, 1245 [to the extent there is a credibility question between a defendant and counsel at a *Marsden* hearing, the trial court is " ' "entitled to accept counsel's explanation" ' "].)

2.    *Irreconcilable Conflict*

As for his contention that he and Honse were " ' "embroiled in such an irreconcilable conflict that ineffective representation [was] likely to result," ' " (*Ng, supra*, 13 Cal.5th at p. 500), Tolentino states that there was "a complete breakdown in the trust relationship" and "the bottom line" was

8

that he "did not trust his attorney, and it appears for good reason." Tolentino explains that his trust in Honse was "undermined due to comments made by [Honse's] investigator and also [Honse's] infrequent trips to the jail to visit him."

Turning first to Tolentino's reliance on the investigator's alleged comments, Tolentino argues that a lack of trust existed because "Honse failed to rebut [Tolentino's] claims that his investigator indicated that he was 'lazy,' Honse easily could have done so by calling his investigator as a witness at the hearing or denying the conduct of laziness . . . . Instead, Honse remained mute, not denying the allegations. While the court was entitled to make a credibility call, it had no evidence from which to refute [Tolentino's] allegations."

This argument plainly misrepresents what occurred at the *Marsden* hearing. Honse did not "remain[ ] mute." Instead, he stated it was "inconceivable" that the investigator had made the comments that Tolentino attributed to him; he pointed out that the investigator was outside the courtroom and could be called to testify (a suggestion discounted by Tolentino); and he represented to the trial court that he was "perfectly prepared" for trial. Under the circumstances, the trial court was well within its discretion to credit Honse's statements and to decide that Tolentino was not being truthful about his conversation with the investigator.

Regarding Tolentino's alleged lack of trust stemming from Honse's infrequent visits, Tolentino also argues that Honse "did not even *discuss* trial strategies and the reasons why he would not be calling certain witnesses with [Tolentino]. [¶] The lack of dialogue . . . showed a breakdown in their relationship, mandating Honse's replacement." (Emphasis in the original.)

9

As we will explain, the trial court reasonably rejected this attempt to establish an irreconcilable conflict.

For one thing, the trial court was not required to accept Tolentino's description of his interactions with Honse regarding potential defense witnesses when that account was contradicted by Honse. Specifically, as we have discussed, Honse disputed Tolentino's account regarding the specific defense witness that Tolentino mentioned during the *Marsden* hearing. Moreover, according to Honse, early in his representation of Tolentino he had a discussion with Tolentino about potential witnesses, and he more recently followed up by trying to locate a defense witness at Tolentino's request.

To the extent that Tolentino focuses on Honse's infrequent and brief jail visits, our Supreme Court has explained that a defense attorney's infrequent visits to a defendant will not justify removal of counsel. (*People v. Myles* (2012) 53 Cal.4th 1181, 1208 ["As for defendant's complaint that counsel rarely visited him, such an allegation does not justify substitution of counsel."].)

Finally, our Supreme Court has made clear that a defendant's claimed lack of trust in an attorney, without more, does not establish a conflict requiring that appointed counsel be removed. (*People v. Jackson* (2009) 45 Cal.4th 662, 688.) " ' "[I]f a defendant's claimed lack of trust in, or inability to get along with, an appointed attorney were sufficient to compel appointment of substitute counsel, defendants effectively would have a veto power over any appointment and by a process of elimination could obtain appointment of their preferred attorneys, which is certainly not the law." ' " (*Ibid.*)

For all of these reasons, we conclude that the trial court was well within its discretion to conclude that the lack of trust in Honse that Tolentino

10

described during the *Marsden* hearing did not rise to the sort of irreconcilable conflict that justified removing Honse as appointed counsel.

In sum, Tolentino has not established that the trial court abused its discretion in denying the *Marsden* motion that it heard on June 27, 2022.[3]

## DISPOSITION

The judgment is affirmed.

IRION, J.

WE CONCUR:

McCONNELL, P. J.

BUCHANAN, J.

---

[3] Because we conclude that the trial court was within its discretion to deny the *Marsden* motion, we need not, and do not, consider whether Tolentino would be able to establish that he was prejudiced by the denial of the motion.

11